IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Marke T. Manley, Jr., *on behalf of* Marke T. Manley (Deceased) | |
| Plaintiff, | Civil Action No. 6:15-530-JMC-KFM |
| vs. | **REPORT OF MAGISTRATE JUDGE** |
| Carolyn W. Colvin, Acting Commissioner of Social Security, | |
| Defendant. | |

This case is before the court for a report and recommendation on the Commissioner's motion to dismiss (doc. 11), pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.), concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).

**FACTS PRESENTED**

On August 17, 2011, Marke T. Manley ("the claimant") filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (doc. 11-2, Kathie Hartt decl. ¶ 2). The State agency responsible for disability determinations at the initial and reconsideration levels of review denied the SSI claim on September 21, 2011, and August 23, 2012, respectively. The DIB claim was denied on August 22, 2011, at the initial level due to lack of insured status. On September 25, 2012, the claimant requested a hearing before an administrative law judge ("ALJ"). On September 8, 2013, the claimant died. The claimant's children, Samantha Marie Haught and Marke T. Manley, Jr. (the plaintiff here), filed Notices Regarding Substitution of Party Upon Death of Claimant stating that they were the claimant's children, wished to be made substitute parties, and wished to proceed with the hearing as requested

by the deceased claimant (*id*. ¶ 2(c), (d) & ex. 2). On September 13, 2013, five days after the claimant's death, a hearing was held before ALJ Frederick Christian at which the claimant's attorney argued that the claimant had unrecorded earnings that would give him insured status for purposes of Title II of the Act (*id.* ¶ 2(c)) .[1]

On April 11, 2014, ALJ Christian held a second hearing at which he reviewed the Forms 1099 submitted by the claimant's attorney, which purported to document previously unrecorded earnings for the claimant from Monticello Farms for the years 2004, 2006, 2007, and 2008 (*id.* ¶ 2(e) & ex. 3). If those earnings were added to the claimant's earnings record, the claimant would have been insured for purposes of Title II of the Act and potentially entitled to DIB. On April 22, 2014, ALJ Christian issued a decision finding that the claimant was disabled within the meaning of the Act and entitled to DIB and SSI from June 20, 2011 (his amended alleged onset date) until the date of his death (*id.* ¶ 2(f) & ex. 4).

In November 2014,[2] M. Acosta, a Claims Authorizer for the Agency, issued a memorandum to ALJ Christian stating that the Agency elected not to effectuate his decision and award an underpayment to the claimant's survivors (*id.* ¶ 2(g) & ex. 5). The memorandum states that, pursuant to the Program Operating Manual System ("POMS") RS 01403.010, Forms 1099 are not acceptable evidence of wages, and tax returns had not been submitted supporting the Forms 1099. Accordingly, the Agency found that, without the earnings represented on the Forms 1099, the claimant was not insured for purposes of Title II (*id.*).

[1] The claimant's children did not qualify to receive SSI benefits after his death as the regulations prohibit SSI underpayments to anyone other than a qualifying spouse or qualifying parent. 20 C.F.R. § 416.542(b)(4). A DIB underpayment can be made to children of a deceased claimant. *Id.* § 404.503(b); 42 U.S.C. § 404(d).

[2] The document is erroneously dated "February 23, 2012" (doc. 11-2, Hartt decl. ¶ 2(g) & ex. 5).

On February 4, 2015, Marke T. Manley, Jr., the claimant's son and the plaintiff in the instant case, filed the complaint in this case, seeking an order from this court requiring the Agency to effectuate ALJ Christian's April 22, 2014, decision (doc. 1).

On June 22, 2015, ALJ Christian issued an amended decision and order finding that the Forms 1099 provided satisfactory evidence of wages and should be added to the claimant's earnings record pursuant to 20 C.F.R. § 404.822(a) (doc. 11-2, Hartt decl. decl. ¶ 2(i) & ex. 6). The ALJ ordered that the Agency effectuate his decision and release any underpayments to the eligible parties. The notice of amended decision and order, which was issued to Samantha Marie Haught on behalf of the claimant, informed her that the Appeals Council may decide to review the amended decision. The notice further explained that the Appeals Council would mail her a notice about its decision to review or not review the amended decision within 60 days from the date of the amended decision (*id.*).

On July 24, 2015, the Appeals Council issued a Notice of Appeals Council Action indicating that it decided to review the ALJ's amended decision as to the Title II claim for DIB due to an error of law, as well as to reopen and revise the ALJ's first hearing decision, which was issued on April 22, 2014, because "the evidence considered in making the decision clearly shows that there was an error" (doc. 11-3, Notice of Appeals Council Action). The notice stated that the Appeals Council was not changing the decision as to the SSI claim (*id.*). The notice further stated that the ALJ erred in finding that the Forms 1099 were satisfactory evidence to establish insured status and that the Appeals Council would issue an unfavorable decision finding that the claimant was not entitled to DIB due to the absence of required evidence to establish earnings that would credit the claimant with the additional quarters of coverage to meet insured status requirements (*id.*). Additionally, the notice stated that the Appeals Council would not act for 30 days, and the claimant's representative could send more evidence or a statement about the facts and law or could

request an appearance before the Appeals Council within 30 days of the date of the notice (*id.*).

On July 24, 2015, the Commissioner filed a motion to dismiss (doc. 11) this case for lack of jurisdiction and failure to exhaust administrative remedies. The plaintiff filed a response in opposition on August 21, 2015 (doc. 15), and the Commissioner filed a reply on August 31, 2015 (doc. 16).

**APPLICABLE LAW AND ANALYSIS**

Title 42, United States Code, Sections 405(g) and (h) authorize judicial review in Social Security cases. Those provisions make clear that they are the only jurisdictional basis for judicial review:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow. . . .

42 U.S.C. § 405(g). The statute continues:

> No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Commissioner of Social Security or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28, United States Code, to recover on any claim arising under this title.

*Id.* § 405(h).

The Supreme Court has recognized that "[t]his provision clearly limits judicial review to a particular type of agency action, a 'final decision of the [Commissioner] made after a hearing.'" *Califano v. Sanders*, 430 U.S. 99, 108 (1977) (quoting 42 U.S.C. § 405(g)). Although the term "final decision" remains undefined in the Act, "its meaning is left to the [Commissioner] to flesh out by regulation." *Weinberger v. Salfi*, 422 U.S. 749, 766 (1975).

The regulations, in turn, provide that a claimant must complete a four-step administrative review process in order to obtain a judicially reviewable final decision. 20 C.F.R. §§ 404.900(a), 405.1(b); *see also Sanders*, 430 U.S. at 102 ("The Act and regulations thus create an orderly administrative mechanism, with district court review of the final decision of the [Commissioner]."). More specifically, the regulations provide that, following the initial determination of a claim, the claimant may ask for a reconsideration of the determination. 20 C.F.R. §§ 404.900(a), 405.1(b). If the claimant is dissatisfied with the reconsideration determination, he has the opportunity to seek a hearing before an ALJ and to have the ALJ's determination reviewed by the Appeals Council. *Id.* §§ 404.933; 404.936; 404.955, 404.968. The Appeals Council may either grant the claimant's request for review and issue its own decision or deny the request for review and allow the ALJ's decision to stand as the final decision of the Commissioner. *Id.* § 404.981. The Appeals Council may also decide to review the case on its own. *Id.* § 404.969. The Appeals Council will review a case if: there appears to be an abuse of discretion by the ALJ; there is an error of law; the action, findings or conclusions of the ALJ are not supported by substantial evidence; there is a broad policy or procedural issue that may affect the general public interest; or the Appeals Council receives new and material evidence, and the decision is contrary to the weight of all the evidence currently of record. *Id.* Only after receiving the "final decision" of the Appeals Council is the claimant permitted to seek judicial review in the federal district court. *Id.* §§ 404.900(a), 405.1(b). A claimant may file an action in federal district court within 60 days after the day the claimant receives notice of the Appeals Council's action. *Id.* § 404.981.

The Commissioner argues that the complaint in this matter is premature, and the undersigned agrees. The Appeals Council had 60 days, or until August 21, 2015, to decide on its own to review the ALJ's amended decision, which was issued on June 22, 2015. *See* 20 C.F.R. § 404.969. As noted above, on July 24, 2015, the Appeals Council issued a Notice of Appeals Council Action indicating that it decided to review the ALJ's

amended decision as to the DIB claim because of an error of law (doc. 11-3). Furthermore, the July 24, 2015, notice stated that the Appeals Council intended to reopen and revise the ALJ's first hearing decision issued on April 22, 2014, because "the evidence considered in making the decision clearly shows that there was an error" (doc. 11-3). A determination, revised determination, decision, or revised decision may be reopened within four years of the date of the notice of the initial determination if good cause exists. 20 C.F.R. § 404.988(b). Good cause to open a determination or decision exists if the evidence that was considered in "making the determination or decision clearly shows on its face that an error was made." *Id.* § 404.989(a)(3). In this case, the initial determination on the claimant's DIB claim was made on August 22, 2011, and, therefore, the Appeals Council could reopen the decision on or before August 22, 2015 (doc. 11-2, Hartt decl. ¶ 2 & ex. 1) (doc. 11-3). Accordingly, the Appeals Council's action in reviewing the ALJ's amended decision and reopening and revising the ALJ's first hearing decision is timely, and the plaintiff has not yet exhausted the administrative review process.

The plaintiff acknowledges the above law prohibits judicial review prior to a "final decision" by the Commissioner (doc. 15 at 1). However, the plaintiff argues that the court should "consider the unique circumstances of this case" (*id.*). Specifically, the plaintiff notes that the ALJ's first fully favorable decision was issued in April 2014, the Appeal Council did not decide to review the decision on its own within 60 days, and the plaintiff did not appeal the decision (*id.* at 1-2). Accordingly, the plaintiff believed that the decision was final and assumed that a Notice of Award and payment of disability underpayments would be forthcoming (*id.*). The plaintiff further states that, despite his repeated inquiries over a period of ten months, the Agency refused to effectuate the ALJ's decision and made it clear that it had no intention of ever effectuating it, leaving this civil action as the only remedy available to plaintiff (*id.*). The plaintiff states that it was three weeks after this civil action

was filed[3] that the Agency's Claims Authorizer notified ALJ Christian that his decision, which was issued ten months earlier, could not be effectuated (*id.*). ALJ Christian's amended decision followed, and the Appeals Council's notice that it intended to reopen and revise ALJ's Christian's decisions was issued on the same day as the instant motion to dismiss (*id.*).

The plaintiff argues that the Commissioner's failure to address the ALJ's supposed error of law within the 60 day appeal period following the first fully favorable decision should be found to constitute a "'final decision' conferring jurisdiction upon this [c]ourt" (*id.* at 3). The plaintiff further argues that the court "should also retain such jurisdiction on grounds of judicial economy" (*id.*). While the court understands the plaintiff's frustration in the delay in receiving a final decision from the Commissioner, the plaintiff has failed to cite any legal basis for the court to review a decision that is not final and has failed to demonstrate how his contentions confer jurisdiction on this court under 42 U.S.C. § 405. Accordingly, the plaintiff has not exhausted the administrative review process, and the complaint should be dismissed for lack of jurisdiction. *See Salfi*, 422 U.S. at 764 ("We interpret the first requirement [of 42 U.S.C. § 405(g)], however, to be central to the requisite grant of subject-matter jurisdiction—the statute empowers district courts to review a particular type of decision by the [Commissioner], that type being those which are 'final' and 'made after a hearing.'").

---

3 The plaintiff filed the complaint in this action on February 4, 2015 (doc. 1). According to the declaration of Kathie Hartt, Chief of Court Case Preparation and Review Branch 2 of the Office of Appellate Operations, Office of Disability Adjudication and Review, for the Social Security Administration, the Agency refused to effectuate ALJ Christian's decision on or before November 20, 2014, although the memorandum communicating this action to the ALJ was erroneously dated February 23, 2012 (doc. 11-2, Hartt decl. ¶ 2 & ex. 5). The document shows that the memorandum was faxed to ALJ Christian's office on November 17, 2014 (*id.*). The plaintiff states that the memorandum is dated "February 23, *2015*," but that is not, in fact, the case based upon the documents before the court (doc. 15 at 2 (emphasis added); *see* doc. 11-2, Hartt decl. ex. 5).

**CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the undersigned recommends that the Commissioner's motion to dismiss (doc. 11) be granted.

IT IS SO RECOMMENDED.

s/ Kevin F. McDonald
United States Magistrate Judge

September 8, 2015
Greenville, South Carolina